**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| LONNIE WHATLEY, | : | MOTION TO VACATE |
|     Movant, | : | 28 U.S.C. § 2255 |
| | : | |
|     v. | : | CRIMINAL INDICTMENT NO. |
| | : | 1:08-CR-0235-CC-JFK-1 |
| UNITED STATES OF AMERICA, | : | |
|     Respondent. | : | CIVIL FILE NO. |
| | : | 1:14-CV-3381-CC-JFK |

**UNITED STATES MAGISTRATE JUDGE'S
FINAL REPORT AND RECOMMENDATION**

Movant has filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct his federal sentence entered in this Court under the above criminal docket number. The matter is before the Court on the motion to vacate [176], Respondent's response [188], and Movant's reply [197]. For the reasons discussed below, Movant's motion to vacate is due to be denied.

## I.   Background

The grand jury for the Northern District of Georgia indicted Movant on four counts of bank robbery – (1) the June 24, 2003, robbery of a South Trust Bank branch in Carrollton, Georgia, Count One; (2) the April 23, 2004, robbery of a Wachovia Bank branch in Hiram, Georgia, Count Three; (3) the July 5, 2005, robbery of a SunTrust Bank branch in Woodstock, Georgia, Count Five; and (4) the October 18,

2006, robbery of a Wachovia Bank branch in Douglasville, Georgia, Count Seven – and on four counts of using a firearm in connection with a bank robbery, Counts, Two, Four, Six, and Eight.  (Indictment, ECF No. 1).  Movant pleaded not guilty and proceeded to trial, represented by Mildred Dunn and Colin Garrett.  (See ECF Nos. 6, 96).  The jury found Movant guilty of the bank robbery crimes and not guilty of the firearm crimes.  (Jury Verdict, ECF No. 116).  The Court imposed a total 318-month term of imprisonment, which was based in part on a four-level enhancement for the abduction of bank employees.  (J., ECF No. 149); see United States v. Whatley, 719 F.3d 1206, 1221 (11th Cir.), cert. denied, _ U.S. _, 134 S. Ct. 453 (2013).

Movant appealed, raising four issues:  (1) the bank employees' in-court identifications violated due process, (2) the court erred in allowing evidence of an attempted robbery, (3) the court erred in denying a new trial based on the jury's exposure to extrinsic evidence, and (4) the court erred in applying a four-level enhancement based on a finding of abduction.  See id. at 1208.  The Eleventh Circuit Court of Appeals affirmed Movant's convictions but remanded with instructions to apply the lesser two-level enhancement for physical restraint instead of the four-level enhancement for abduction.  Id. at 1223.  On August 21, 2013, the Court entered an

2

amended judgment, imposing a total 256-month term of imprisonment. (Am. J., ECF No. 174).

Movant now challenges his convictions and sentences via 28 U.S.C. § 2255. (Mot. to Vacate, ECF No. 176). Movant raises fifteen grounds for relief:

1. The prosecutor committed misconduct in knowingly allowing government eyewitnesses to testify untruthfully.

2. The prosecutor committed misconduct in exposing the jury to Petitioner's criminal history, thereby depriving Petitioner of his right to testify.

3. The prosecutor committed misconduct by withholding exculpatory evidence found at the crime scene.

4. The prosecutor committed misconduct in presenting Stephen Robert Cross's testimony.

5. The prosecutor committed misconduct in vouching for government witnesses and evidence.

6. Defense counsel was ineffective during critical stages of the proceedings.

7. Defense counsel was ineffective in failing to properly prepare for cross-examination of government witnesses.

8. The prosecutor committed misconduct in regard to key witness Joe Fonseca.

9. Defense counsel was ineffective in failing to properly challenge the in-court identification of Movant.

10. Defense counsel was ineffective for failing to seek acquittal under Fed. R. Crim. P. 29.

11.  The prosecutor committed misconduct before the grand jury.

12.  The court erred in resentencing Movant on remand.

13.  Appellate counsel was ineffective for failing to argue that the trial court abused its discretion in allowing government exhibit number 126.

14.  Appellate counsel was ineffective for failing to argue that the trial court abused its discretion in allowing government exhibit numbers 153-163.

15.  Appellate counsel was ineffective for failing to invoke 18 U.S.C. § 3742 and Fed. R. Crim. P. 43 on remand for resentencing.

(Mot. to Vacate, Grounds One through Fifteen).

## II.  <u>28 U.S.C. § 2255 Standard</u>

Section 2255 of Title 28 allows a district court to vacate, set aside, or correct a federal sentence that was imposed in violation of the Constitution or laws of the United States or was imposed by a court without jurisdiction, exceeds the maximum sentence authorized by law, or is otherwise subject to collateral attack.  28 U.S.C. § 2255.  Collateral relief, however, is limited.  "Once [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted," <u>United States v. Frady</u>, 456 U.S. 152, 164 (1982), and it is the movant's burden to establish his right to collateral relief, <u>Rivers v. United States</u>, 777 F.3d 1306, 1316 (2015), <u>cert. denied</u>, 2015 WL 4765481 (U.S. Oct. 5, 2015) (No. 15-5624).

4

Matters decided on direct appeal cannot be re-litigated under § 2255. <u>Rozier v. United States</u>, 701 F.3d 681, 684 (11th Cir. 2012) (citing <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1343 (11th Cir. 2000)), <u>cert. denied.</u> _ U.S. _, 133 S. Ct. 1740 (2013). Additionally, matters that could have been raised on direct appeal, but were not, generally are foreclosed in § 2255 proceedings unless the movant can show cause and prejudice for his default or a miscarriage of justice. <u>McKay v. United States</u>, 657 F.3d 1190, 1196 (11th Cir. 2011). Thus, § 2255 relief "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." <u>Lynn v. United States</u>, 365 F.3d 1225, 1232 (2004) (quoting <u>Richards v. United States</u>, 837 F.2d 965, 966 (11th Cir. 1988)) (internal quotation marks omitted); <u>see</u> <u>also</u> <u>Massaro v. United States</u>, 538 U.S. 500, 505-09 (2003) (holding that a constitutional claim of ineffective assistance of counsel generally is properly raised on collateral review in order to allow for adequate development and presentation of relevant facts).

"An evidentiary hearing is not required when 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"

Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (quoting § 2255). That is the case here, as shown in the discussion below.

## III.   Discussion

### A.   Prosecutorial Misconduct, Grounds One through Five, Eight, and Eleven

#### 1.   Ground One – Eyewitness Testimony

On direct appeal, Movant discussed inconsistencies in the testimony and in-court identification of Movant by government witnesses April Bell, Amanda Budde, Sandy Eidson, Andra Beaudoin, Vickie Hart, Whitney Gamble, Lorena Gentile, Ananda Admiral, Christopher McMahon, Lynn Hutter, Melissa Griffin, Jena Edwards, and Bethany Gordon. Appellant Br. at 14-18, 20-24, 25-28, 31-35; Whatley, 719 F.3d 1206, 2012 WL 1151603. Movant argued that – in light of the inconsistencies between the witnesses' trial testimony and prior statements – the use of in-court identification was impermissibly suggestive because he was the only African-American male at the defense table. Id. at 54-59.

The Eleventh Circuit Court of Appeals rejected Movant's claim.

[Perry v. New Hampshire, _ U.S. _, 132 S. Ct. 716 (2012),] makes clear that, for those defendants who are identified under suggestive circumstances not arranged by police, the requirements of due process are satisfied in the ordinary protections of trial. Id. at 728. These protections include the right to confront witnesses, the right to effective

6

assistance of an attorney who can expose the flaws in identification testimony on cross-examination, the right to eyewitness-specific jury instructions as adopted by the jurisdiction, and the right to be presumed innocent until found guilty beyond a reasonable doubt by a jury of the defendant's peers.  Id. at 728-29.

Whatley, 719 F.3d at 1216.  The Eleventh Circuit found the following --

> [Movant] was able to confront all of the eyewitnesses who identified him in court.  His counsel ably highlighted the frailties of the in-court identifications, including the discrepancies between the testimony given at trial and the witnesses' previous statements to police, the length of time that had passed between the witnesses' initial statements – when the bank robberies were fresh in their minds – and their testimony at trial, and the past misidentifications by the witnesses of other men as the bank robber. [Movant's] counsel also introduced sketches produced by the eyewitnesses that were dissimilar to [Movant] to undermine the weight of the eyewitness identifications. The district court provided limiting instructions before each in-court identification and instructed the jury at the end of the trial to evaluate the reliability of each identification.

Whatley, 719 F.3d at 1217.

Movant now argues that the prosecutor committed misconduct by allowing government witnesses Bell, Budde, Eidson, Beaudoin, Hart, Gamble, Gentile, Admiral, Griffin, Edwards, and Gordon to testify inconsistently with their previous statements and inconsistently with each other.[1] (Mot. to Vacate, Ground One; Mov't

---

[1]The inconsistencies include, among other things, the following:  whether the robber's head was egg-shaped or flat on top; whether his eyes were normal or small; whether his nose was straight, average length, and wide or was a normal nose; whether his height was five foot six inches or five foot eight or nine inches; whether his complexion was medium, dark, or medium with light tones; a witness's failure to

7

Mem. at 5-17, ECF No. 176-1).  Movant relies on Napue v. People of State of Ill., 360 U.S. 264. 269-72 (1959) (holding that the government's knowing use of uncorrected false testimony, that may have had an effect on the outcome of the trial, violates due process).  (Mov't Mem. at 5).

The government argues that this ground fails because Movant failed to raise the prosecutorial misconduct claim on direct appeal and because he is simply attempting to re-package his due-process/identification claim, which the Eleventh Circuit Court of Appeals rejected.  (Resp't Resp. at 13, ECF No. 188).  Movant replies that ineffective assistance of appellate counsel was the cause for not raising this prosecutorial misconduct claim on direct appeal.  (Mov't Reply ¶ A, ECF No. 197).

As stated above, claims that could have been raised on direct appeal, but were not, generally are foreclosed in § 2255 proceedings unless the movant can show cause and prejudice for his default or a miscarriage of justice.  McKay, 657 F.3d at 1196. "Constitutionally ineffective assistance of counsel can constitute cause[.]"  Brown v. United States, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting Holladay v. Haley, 209 F.3d 1243, 1254 (11th Cir. 2000)) (internal quotation marks omitted), cert. denied, _

---

mention the robber's acne scarring before giving testimony at trial; whether a witness observed the robber without a bandana over his face for two or three minutes or only observed him with a bandana; and whether the robber's bandana was red or blue. (Mov't Mem. at 5-6, 11-13, ECF No. 176-1).

8

U.S. _, 135 S. Ct. 743 (2014). To establish cause based on ineffective assistance of appellate counsel, a Movant must demonstrate deficient performance by counsel and demonstrate that, if counsel had not performed deficiently, there is a reasonable probability that the appellate outcome would have been favorable to the movant. See Ferrell v. Hall, 640 F.3d 1199, 1236 (11th Cir. 2011). Here, Movant fails to show that there is a reasonable probability of a different appellate outcome because, had counsel raised a prosecutorial misconduct claim, it would have failed, as discussed below.

A prosecutor violates due process when he or she knowingly, and without correction, allows a governmental witness to testify falsely. Napue, 360 U.S. at 265, 269. "To establish prosecutorial misconduct for the use of false testimony, a defendant must show the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." United States v. McNair, 605 F.3d 1152, 1208 (11th Cir. 2010). "Perjury is defined as testimony 'given with the willful intent to provide false testimony and not as a result of a mistake, confusion, or faulty memory.'" Id. (quoting United States v. Ellisor, 522 F.3d 1255, 1277 n. 34 (11th Cir. 2008)). "[A] prior statement that is merely inconsistent with a government witness's testimony is insufficient to establish

9

prosecutorial misconduct" or to "'impute knowledge of falsity to the prosecutor.'" Id. (quoting United States v. Michael, 17 F.3d 1383, 1385 (11th Cir. 1994)).

Further, to show a due process violation based on prosecutorial misconduct, a defendant must show not only misconduct but must also show prejudice. Smith v. Phillips, 455 U.S. 209, 219-20 (1982). Prejudice is determined by inquiring whether "the false testimony could in any reasonable likelihood have affected the judgment of the jury." United States v. Barham, 595 F.2d 231, 242 (5th Cir. 1979) (quoting Giglio v. United States, 405 U.S. 150, 154 (1972)) (internal quotation marks omitted). "The reviewing court must focus on the impact on the jury." Id. (citation and internal quotation marks omitted). The use of inconsistent statements does not have the potential of affecting the jury's verdict – if a petitioner is "fully aware at trial . . . of the inconsistency between [a witness's] testimony and his earlier statements" and "the jury was made aware of the inconsistency, the 'false' testimony could not affect the judgment of the jury." Tejada v. Dugger, 941 F.2d 1551, 1557 (11th Cir. 1991). "Trials allow a full airing of differing accounts of a chaotic event. Impeachment allows a party to highlight inconsistencies within a witness's testimony and inconsistencies between a witness's testimony and that of other witnesses. The task

then falls to the jury to sort through all the testimony to determine the facts." <u>Baker v. Welker</u>, 438 F. App'x 852, 854 (11th Cir. 2011).

To the extent that Movant's prosecutorial misconduct claim is distinct from the due process claim raised on direct appeal, Movant's assertion of ineffective assistance of appellate counsel does not overcome his default of the prosecutorial misconduct claim. Petitioner does not show that the challenged testimony was willfully given with the intent of providing false testimony as opposed to being the result of mistake, confusion, and/or faulty memory. Accordingly, Petitioner does not show that appellate counsel was unreasonable for not asserting that the prosecution knowingly presented false testimony. Further, Movant cannot show prejudice. Movant's trial counsel made the jury aware of the frailties and inconsistencies in the eyewitnesses testimony – therefore, the allegedly "false" testimony could not have prejudiced Movant. <u>Tejada</u>, 941 F.2d at 1557.

## 2.   <u>Ground Two – Movant's Criminal History</u>

Movant decided not to testify. (Trial Tr. at 1900, ECF No. 137). Subsequently, during deliberations, the jury improperly learned that Movant previously had been charged with being a convicted felon in possession of a firearm and with theft by receiving stolen property. (Trial Tr. at 25, ECF No. 119; Order of June 23, 2011, at

11

2, ECF No. 143).   The Court declined granting a new trial based on the jury's exposure to the above extrinsic evidence.  (Order of June 23, 2011, at 11). The Court found that the extrinsic evidence reached the jury "completely by unfortunate inadvertence. . . . The documents were not discovered within the financial records before the records went out with the jury due to the failure of counsel for the Government and Defendant to review the admitted evidence . . . . [T]here was no intent by any party . . . to taint the jury's deliberations."  (Id. at 7-8).

On direct appeal, Movant argued that the district court abused its discretion in denying a new trial.  See Whatley, 719 F.3d at 1208.  The Eleventh Circuit Court of Appeals found that Movant and the prosecution were equally responsible for the inadvertent error and found no abuse of discretion in the Court's denying the motion for a new trial. Id. at 1220-21.

Movant now raises a claim of prosecutorial misconduct for exposing the jury to his criminal history, which, Movant asserts, deprived him of his right to testify. (Mov't Mem. at 18).  Movant asserts that he would have testified if he had known that the jury was going to be exposed to his criminal history.  (Id.).

The government argues that this ground fails because Movant failed to raise the prosecutorial misconduct claim on direct appeal and because he is simply attempting

12

to re-package the extrinsic-evidence claim that he raised on direct appeal, which the Eleventh Circuit Court of Appeals rejected.  (Resp't Resp. at 17).  Movant replies and reasserts that he should prevail on Ground Two.  (Mov't Reply ¶ B).

Movant's Ground Two claim, which was not raised as a prosecutorial misconduct claim on direct appeal, is foreclosed unless Movant has shown cause and prejudice for his default or a miscarriage of justice.  See McKay, 657 F.3d at 1196. In his Ground Two arguments, Movant does not attempt to overcome his default.  (See Mot. to Vacate, Ground Two; Mov't Mem. at 18-20; Mov't Reply ¶ B).  Accordingly, Ground Two is foreclosed.

Further, Movant fails to show prosecutorial misconduct or ineffective assistance of appellate counsel for failing to raise prosecutorial misconduct based on the extrinsic evidence issue – which this Court and the Eleventh Circuit Court of Appeals found was an inadvertent error.  See United States v. Spears, 827 F.2d 705, 709 (11th Cir. 1987) ("[T]he district court concluded that any delay in disclosing this material was inadvertent.  As such, it cannot form a basis for prosecutorial misconduct.").

### 3.    Ground Three – Loss of Index Card

Investigator Sammy Hines Goble testified at trial that he received as evidence an index card with a finger print, which was related to the investigation of one of the

robberies; that he lost the card during an office move; and that it was never sent in to the Georgia Bureau of Investigations to be tested.  (Trial Tr. at 1838-43, ECF No. 137).

Movant asserts a claim of prosecutorial misconduct under Brady v. Maryland, 373 U.S. 83 (1963), based on the loss of the index card, which he asserts was favorable evidence on which he "could have been exonerated[.]" (Mov't Mem. at 21, 24).  The government argues that Ground Three is procedurally barred based on Movant's failure to raise it on direct appeal and that Movant does not show a Brady violation.  (Resp't Resp. at 19).  Movant replies that he should prevail because the fingerprint evidence, had it been preserved, would not have matched Movant's fingerprint.  (Mov't Reply ¶ C).

Ground Three was not raised on direct appeal and is foreclosed unless Movant has shown cause and prejudice for his default or a miscarriage of justice.  See McKay, 657 F.3d at 1196.  In his Ground Three arguments, Movant does not attempt to overcome his default.  (See Mot. to Vacate, Ground Three; Mov't Mem. at 21-25; Mov't Reply ¶ C).  Accordingly, Ground Three is foreclosed.

Further, Movant's arguments do not support an ineffective assistance of appellate counsel claim that is sufficient to show cause for Movant's default.  There

14

is no viable <u>Brady</u> claim that appellate counsel reasonably should have raised.  Under

<u>Brady</u>, "the suppression by the prosecution of evidence favorable to an accused upon

request violates due process where the evidence is material either to guilt or to

punishment, irrespective of the good faith or bad faith of the prosecution." <u>Brady</u>, 373

U.S. at 87.  To establish a <u>Brady</u> claim, the petitioner must "prove that (1) the

government possessed evidence favorable to him; (2) the defendant did not possess

the evidence and could not have obtained it with reasonable diligence; (3) the

government suppressed the favorable evidence; and (4) the evidence was material."

<u>Davis v. Terry</u>, 465 F.3d 1249, 1254 (11th Cir. 2006). Movant must prove that the

index-card evidence was favorable to him.  Movant's speculation does not do so.  <u>See</u>

<u>United States v. Erickson</u>, 561 F.3d 1150, 1163 (10th Cir. 2009) ("A <u>Brady</u> claim fails

if the existence of favorable evidence is merely suspected.").

### 4.   <u>Ground Four - Stephen Robert Cross's Testimony</u>

At trial, Cross, SunTrust Bank security manager, testified that, out of the

approximately 400 robberies he had been involved in investigating, he recalled two

after-closing "takeover" robberies (one being the July 5, 2005, Woodstock robbery)

15

and that only the Woodstock robbery involved the taking of bank surveillance video.[2] (Trial Tr. at 932-33, ECF No. 133).

Movant asserts a claim of prosecutorial misconduct under Giglio, 405 U.S. 150, for allowing Cross to testify inconsistently with his investigative notes. (Mot. to Vacate, Ground Four; Mov't Mem. at 25-26). Movant has provided a copy of the investigative note at issue, logged by Cross on July 22, 2005, which states "Ashford Dunwoody Branch was robbed on 7/21/05 by B/M suspect using similar M.O." (Mov't Ex. 4, ECF No. 176-6). The government argues that Ground Four is procedurally barred based on Movant's failure to raise it on direct appeal and that Movant does not show a Giglio violation. (Resp't Resp. at 22-23). Movant replies that the claim only became available in 2012, when he learned of the investigative statement at another trial. (Mov't Reply ¶ D).

Ground Four was not raised in Movant's direct appeal, which was decided June 3, 2013. Accordingly, Ground Four is now foreclosed unless Movant has shown cause (other than his learning of the claim in 2012) and prejudice for his default or a miscarriage of justice. See McKay, 657 F.3d at 1196. In his Ground Four arguments, Movant does not otherwise attempt to overcome his default. (See Mot. to Vacate,

---

[2]The Count Five robbery on July 5, 2005, involved the SunTrust Bank branch in Woodstock, Georgia. (Indictment, Count Five; Trial Tr. at 929, ECF No. 133).

Ground Four; Mov't Mem. at 25-26; Mov't Reply ¶ D).  Accordingly, Ground Four is foreclosed.

Further, Movant's arguments do not support an ineffective assistance of appellate counsel claim that is sufficient to show cause for Movant's default.  There is no viable <u>Giglio</u> claim that appellate counsel reasonably should have raised.  Under <u>Giglio</u>, due process requires the prosecution to give to the defense any evidence in its possession or control that pertains to perjured or false testimony that is material to the case.  <u>Giglio</u>, 405 U.S. at 154-55.  "To establish a Giglio claim, a habeas petitioner must prove: (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material, i.e., that there is any reasonable likelihood that the false testimony could have affected the judgment."  <u>Trepal v. Sec'y, Fla. Dep't of Corr.</u>, 684 F.3d 1088, 1107-08 (11th Cir. 2012) (quoting <u>Guzman v. Sec'y, Dep't of Corr.</u>, 663 F.3d 1336, 1348 (11th Cir. 2011)) (internal quotation marks omitted).

To succeed on a <u>Giglio</u> claim, appellate counsel would have been required to show the knowing use of perjured testimony.  The investigative statement submitted by Movant does not show that Cross perjured himself when he testified that he recalled two after-closing takeover robberies and recalled that *only* the Woodstock

robbery involved the taking of a bank surveillance video.  Even if Cross in his investigative statement was referring to Movant's M.O. when he referred to the use of a similar M.O. at the Ashford Dunwoody branch, he did not define that M.O. to include taking bank surveillance videos.  Movant does not show that Cross perjured himself.

### 5. <u>Ground Five – Vouching</u>

Movant asserts prosecutorial misconduct based on the prosecution's vouching for government witnesses and evidence.  (Mot. to Vacate, Ground Five).  The government argues that Ground Five is procedurally barred based on Movant's failure to raise it on direct appeal.  (Resp't Resp. at 24-25).  Movant's reply adds nothing of significance.  (Mov't Reply ¶ E).

Ground Five was not raised in Movant's direct appeal, and it is now foreclosed unless Movant has shown cause and prejudice for his default or a miscarriage of justice.  <u>See</u> <u>McKay</u>, 657 F.3d at 1196.  In his Ground Five arguments, Movant does not attempt to overcome his default.  (<u>See</u> Mot. to Vacate, Ground Five; Mov't Mem. at 27-28; Mov't Reply ¶ E).  Accordingly, Ground Five is foreclosed.

18

### 6.    <u>Ground Eight – Joe Fonseca's Testimony</u>

Federal Bureau of Investigations (FBI) special agent Fonseca testified at trial that he was aware of no fingerprint or forensic evidence recovered from the October 18, 2006, robbery at the Wachovia Bank branch at 6300 Arbor Place Boulevard, in Douglasville, Georgia.  (Trial Tr. at 1560, ECF No. 136; <u>see</u> <u>also</u> Indictment, Count Seven).

Movant asserts a claim of prosecutorial misconduct under <u>Napue</u>, <u>Giglio</u>, and <u>Brady</u>, for allowing Fonseca to testify falsely and inconsistently with a police report that was not turned over to the defense.  (Mot. to Vacate, Ground Eight; Mov't Mem. at 31-32).  Movant has provided a copy of a police report, by Reporting Officer Amy Belcher, which states,  "ARDIS 347 ADV he has found footprints that match the ones inside the Bank in this lot[.]"  (Mov't Ex. 5, ECF No. 176-7).  The police report involved a robbery on October 18, 2006, of a Wachovia Bank branch on Chapel Hill Road in Douglasville.  (<u>Id.</u>).

The government argues that Movant fails to show prosecutorial misconduct or a <u>Brady</u> violation.  (Resp't Resp. at 23-24).  Movant replies that Fonseca was aware of the evidence and additionally asserts that he only learned of the report at his 2012 Douglas County trial.  (Mov't Reply ¶ D).

Ground Eight was not raised in Movant's direct appeal (decided June 3, 2013), and it is now foreclosed unless Movant has shown cause (other than his learning of the claim in 2012) and prejudice for his default or a miscarriage of justice.  See McKay, 657 F.3d at 1196.  In his Ground Eight arguments, Movant does not otherwise attempt to overcome his default.  (See Mot. to Vacate, Ground Eight; Mov't Mem. at 31-32; Mov't Reply ¶ F).  Accordingly, Ground Eight is foreclosed.

Further, Movant's arguments do not support an ineffective assistance of appellate counsel claim that is sufficient to show cause for Movant's default.  The report – which refers to footprints, which was prepared by someone other than Fonseca, and which indicates a different bank address than the bank address in Count Seven[3] – is insufficient to support a viable claim of false testimony by Fonseca that appellate counsel should have raised on direct appeal.

### 7.   Ground Eleven - the Grand Jury

Movant asserts a claim of prosecutorial misconduct before the grand jury. (Mot. to Vacate, Ground Eleven; Mov't Mem. at 37-38).  Movant refers to his other prosecutorial misconduct claims and states that the prosecutor in his case has since been disbarred.  Movant, however, admits that he cannot support this ground unless

---

[3]The bank addresses are close in location, but different.

the Court gives him access to the grand jury transcripts. (Mov't Mem. at 37-38). The government responds that Movant fails to show that he is entitled to grand jury transcripts.[4] (Resp't Resp. at 38-40).

Ground Eleven was not raised in Movant's direct appeal, and it is now foreclosed unless Movant has shown cause and prejudice for his default or a miscarriage of justice. See McKay, 657 F.3d at 1196. In his Ground Eleven arguments, Movant does not attempt to overcome his default. (See Mot. to Vacate, Ground Eleven; Mov't Mem. at 37-38; Mov't Reply ¶ H). Accordingly, Ground Eight is foreclosed.

### B.    Ineffective Assistance of Trial Counsel, Grounds Six, Seven, Nine, and Ten

Movant asserts generally in Ground Six that trial counsel was ineffective and then refers to his more specific grounds of ineffective assistance of trial counsel. (Mot. to Vacate, Ground Six). Because Movant's more specific grounds fail, as discussed below, Ground Six also fails.

---

[4]The government treats Movant's Ground Eleven as a motion for grand jury transcripts. The Court finds that Movant presents a claim of prosecutorial misconduct, accompanied by a request to expand the record to include grand jury transcripts.

### 1.   <u>Ground Seven – Cross Examination</u>

Movant argues that trial counsel was ineffective in failing to interview government witnesses and properly prepare for cross-examination of those witnesses. (Mot. to Vacate, Ground Seven).  Movant appears to argue that proper preparation would have allowed trial counsel effectively to challenge the testimony and inconsistencies that Movant presented in his prosecutorial-misconduct claims. (Mov't Mem. at 29-30).

The government argues that Movant's argument fails because, among other things, it is speculative and thus fails to show prejudice.  (Resp't Resp. at 30-31). Without providing any record citations or support, Movant replies that counsel could have rebutted false financial records, shown that a nine-millimeter firearm could not have been used in any bank robbery, and shown that Fonseca planted rubber gloves. (Mov't Reply ¶ G).

A criminal defendant possesses a Sixth Amendment right to "reasonably effective" legal assistance.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).  To show constitutionally ineffective assistance of counsel, a petitioner must establish that counsel's representation was deficient and that counsel's deficient representation prejudiced him.  <u>Id.</u> at 690-92.  The Court may resolve an ineffective assistance claim

based on either of the above prongs.  <u>Pooler v. Sec'y, Fla. Dep't of Corr.</u>, 702 F.3d 1252, 1269 (11th Cir. 2012), <u>cert. denied</u>, _ U.S. _, 134 S. Ct. 191 (2013).

Under the first prong, the court must be "highly deferential" and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" <u>Strickland</u>, 466 U.S. at 689.  The petitioner must show that "no competent counsel would have taken the action that his counsel did take." <u>United States v. Freixas</u>, 332 F.3d 1314, 1319-20 (11th Cir. 2003) (citation and internal quotation marks omitted).

Under the second prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.  The habeas petitioner has the burden of affirmatively proving prejudice, and a "conceivable effect" on the proceedings does not show prejudice. <u>Wood v. Allen</u>, 542 F.3d 1281, 1309 (11th Cir. 2008) (quoting <u>Strickland</u>, 466 U.S. at 693) (internal quotation marks omitted).  If a petitioner complains of counsel's failure to investigate, he must show that "knowledge of the uninvestigated evidence would have altered" counsel's

23

representation.  Gilreath v. Head, 234 F.3d 547, 552 n.12 (11th Cir. 2000) (citation and internal quotation marks omitted).

Movant's Ground Seven is too general to show prejudice in a manner that establishes constitutionally inadequate representation by his trial counsel.  Movant provides nothing concrete to show that any specific government witness would have talked with the defense.  Movant does not show that counsel would have obtained any knowledge from those interviews that he did not already have.  Further, Movant does not show how counsel would have altered his cross-examination to challenge any specific witness.

### 2.    Ground Nine – In Court Identification

At trial, Eidson positively identified Movant as the bank robber.  (Trial Tr. at 214, ECF No. 129).  On cross examination, defense counsel brought out the fact that Movant was the only African American at the defense table, asking questions such as, "The only person you even considered identifying was the one African-American man sitting at the defense counsel table, correct?  Did you consider anybody else?" and "Realistically, he's the only person you could have possibly identified in this proceeding today; isn't that right?"  (Id. at 232-33).  Eidson nevertheless confirmed her identification of Movant multiple times, including:  "I know who the robber is.

24

I've seen him and that's him"; "It's the man that robbed me"; "That's the man that robbed me"; and "I know who he is and that's who he is." (Id. at 232).  In two bench conferences, the government expressed concern on how to deal with defense counsel accusing Eidson of lying and false identification, and the Court suggested that one way to deal with the issue was to place another black male at the defense table.  (Id. at 235-36).  Defense counsel stated that they would think about it.  (Id. at 237). During closing, defense counsel stated that the identification testimony was unreliable because there was only one person the witnesses could identify – "There's only one place to look . . . .That's him, the black man in the middle.  Who else are they going to identify.  These were not reliable, fair identifications." (Trial Tr. at 1956, 1958-59, ECF No. 138).

Movant argues that defense counsel was ineffective for failing to pursue the suggestion offered by the Court – to have another African American sitting at the defense table, when it was suggestive for Movant to be the only African American sitting at the defense table.[5]  (Mot. to Vacate, Ground Nine; Mov't Mem. at 32-33). The government argues that Movant's speculative argument fails to show prejudice.

---

[5]Movant relies on the interchange during Eidson's identification testimony, reviewed earlier.  (Mov't Mem. at 32-33).

(Resp't Resp. at 31-32).  Movant's reply does not add significantly to his initial argument.  (Mov't Reply ¶ G).

Movant fails to show that counsel's decision not to pursue the Court's suggestion was unreasonable.  Movant provides no reason to think that another African American at the defense table would have changed Eidson's positive identification testimony.[6]  Movant would have succeeded only in losing the ability to argue that he was unjustly identified because he was the only African American at the defense table.  Movant fails to show that counsel's actions were those that no competent counsel would have taken.

### 3.   Ground Ten – Acquittal

Movant argues that defense counsel was ineffective for failing to seek an acquittal based on insufficient evidence under Fed. R. Crim. P. 29.  (Mot. to Vacate, Ground Ten; Mov't Mem. at 36).  In arguing that the evidence was insufficient, Movant refers generally and without specificity to perjured testimony, conflicting identification evidence, and prosecutorial misconduct.  (Mov't Mem. at 35). Movant does not identify the charges (or the elements of those charges) on which he should

---

[6]The Court refers to Eidson's identification testimony because that is the testimony during which the Court gave the suggestion to which Movant refers. (Mov't Mem. at 32-33).

have been acquitted but argues that the Court should be aware of the lack of evidence. (Id. at 36).  The government argues that Movant has not shown that the motion would have succeeded in this Court or on appeal.  (Resp't Resp. at 33).  Movant's response does not add anything significant.  (Mov't Reply ¶ G).

Absent an argument showing the specifics that counsel allegedly should have raised, Movant fails to meet his burden of showing that there is a reasonable probability that a Rule 29 motion would have changed the outcome.

### C.   Ineffective Assistance of Appellant Counsel, Grounds Thirteen through Fifteen

#### 1.   Ground Thirteen – Exhibit Number 126

FBI Agent Fonseca testified that Movant's girlfriend (after Movant was taken into custody) had retained certain items belonging to Movant and that officials obtained a search warrant for her home and found various documents, labeled as government exhibit 126.  The government moved to enter those documents into evidence.[7]  (Trial Tr. at 1571-72, 1583, 1586, ECF No. 136).  Defense counsel

---

[7]Movant states that the warrant was not for documents that belonged to Movant and, in his reply, states that the warrant was an unconstitutional blanket warrant. (Mov't Mem. at 42; Mov't Reply ¶ G).  It is apparent that the warrant was for items belonging to Movant, and Movant presents nothing to show otherwise.  The Court does not construe Movant's passing statements on the search warrant as an independent claim that appellate counsel should have challenged the search warrant on appeal.

27

objected that the documents contained hearsay on business transactions.  (Id. at 1584-85).  The Court admitted the exhibit as containing documents that belonged to Movant.  (Id. at 1589-90).  Exhibit 126 contained an appraisal for diamond earrings, a traffic citation to Movant for having too much tint on the windows of his 2007 Mercedes, a truth in lending disclosure statement for $15,000, and an e-mail to Movant concerning a cash payment for beach property.  (Id. at 1590-91).

Movant argues that appellate counsel was ineffective in failing to argue that admitting government exhibit 126 was error because Movant did not live at the home where the documents were found.  (Mot. to Vacate, Ground Thirteen; Mov't Mem. at 41-43).  The government argues that Movant's argument, which lacks any substantive support, fails.  (Resp't Resp. at 34-35).

As stated earlier, to show ineffective assistance of appellate counsel, a movant must demonstrate deficient performance by counsel and demonstrate that, if counsel had raised the issue on appeal, there is a reasonable probability that the appellate outcome would have been favorable to the movant.  See Ferrell, 640 F.3d at 1236. Ground Thirteen fails because Movant presents no hearsay argument that would have had a reasonable chance of success had appellate counsel raised it on direct appeal and

presents no viable argument that brings into question the finding that the documents in exhibit 126 belonged to him.

### 2.      Ground Fourteen – Exhibit Numbers 153-163

At trial, during testimony by Clifford L. Felton, financial analyst with the FBI, the government introduced into evidence exhibits 153-163, which contained a basic analysis of Movant's financial accounts.  (Trial Tr. at 1793, ECF No. 137).  The exhibits were admitted, subject to a previous objection by Movant.  (Id. at 1794).

Movant argues that appellate counsel was ineffective for failing to argue that the trial court abused its discretion in allowing government exhibit numbers 153-163. (Mot. to Vacate, Ground Fourteen; Mov't Mem. at 43-46).[8]  Movant does not explain or provide a citation to the prior objection (referred to at trial but not explained), which he asserts that appellate counsel should have pursued on direct appeal.  (Mov't Mem. at 45-46).  The government argues that Movant's argument, which lacks any substantive support, fails.  (Resp't Resp. at 34-35).

---

[8]Movant argues that Felton discredited himself in Movant's subsequent state trial.  (Mov't Mem. at 45).  Movant's Exhibit Eight, allegedly part of a state trial transcript, shows that Felton admits to making a mistake in the calculations for the state proceedings but also shows that he maintained that there was nothing incorrect in the federal calculations, which were higher because there were "some things we could not get in on the state level[.]"  (Mov't Ex. 8 at 1137, ECF No. 176-10).

The Court agrees with the government.  Movant has the burden to show that appellate counsel was ineffective.  Movant fails to explain to the Court the argument that appellate counsel should have raised on appeal, and he has not met his burden.

### 3.    <u>Ground Fifteen – Resentencing</u>

As indicated earlier, the Eleventh Circuit Court of Appeals remanded "for resentencing with instructions to apply the two-level enhancement for physical restraint instead of the four-level enhancement for abduction." <u>Whatley</u>, 719 F.3d at 1223.  Movant and the government filed a joint motion for imposition of a 256-month sentence and a joint waiver of a hearing.  (Mot., ECF No. 173).  The motion states that the parties came to a joint recommendation after taking into consideration all of the relevant 18 U.S.C. § 3553 factors.  (<u>Id.</u> at 1).  The motion concludes, "[Movant] is in agreement with this sentence.  To the extent the Court intends to impose the above sentence, [Movant] waives his right to appear before the Court for a resentencing hearing."  (<u>Id.</u> at 3).  The Court imposed the sentence, as agreed on by the parties. (Am. J.).  Movant did not appeal his resentencing.

Movant now asserts that counsel was ineffective for failing to invoke 18 U.S.C. § 3742 and Fed. R. Crim. P. 43(a) on remand for resentencing, for advising him that he did not need to return to Court for resentencing, for discouraging him from

pursuing additional review in light of changes in the law, and for discouraging him from seeking a variance under § 3553(a) factors.[9]  (Mot. to Vacate, Ground Fifteen; Mov't Mem. at 46).  The government responds that Movant fails to show that his counsel was ineffective.  (Resp't Resp. at 37).

On remand, the district court was required to resentence Movant "in accordance with section 3553 and with such instructions as may have been given by the court of appeals[.]"  18 U.S.C. § 3742(g).  Under § 3553(a), the Court shall consider, among other things, "the nature and circumstances of the offense and the history and characteristics of the defendant[.]"  A defendant generally must be present at sentencing but may waive that right.  Fed. R. Crim. P. 43(a)(3), (c)(2).

Here, the parties considered the § 3553 factors, and the agreed-upon sentence complied with the Eleventh Circuit Court of Appeals' instructions.  Thus, counsel's

---

[9]On the changes in law and § 3553 factors, Movant refers to his "previous" argument.  (Mov't Mem. at 46).  Movant appears to refer to the following two arguments.  Movant was entitled to appear at resentencing to argue for a variance based on unspecified facts from his childhood and upbringing.  (See id. at 38-39; Mov't Ex. 6, ECF No. 176-8).  Movant was entitled to present arguments based on Alleyne v. United States, _ U.S. _, _, 133 S. Ct. 2151, 2155 (2013) (holding that any fact that increases the mandatory minimum sentence is an element that must be submitted to the jury and found beyond a reasonable doubt), and Peugh v. United States, _ U.S. _, _, 133 S. Ct. 2072, 2084 (2013) (holding that the Ex Post Facto Clause is violated when guidelines at sentencing provide a higher sentencing range than the guidelines in effect at the time the offense was committed).

AO 72A
(Rev.8/82)

actions complied with § 3742(g), and Movant fails to show how counsel was deficient in failing to "invoke" § 3742. (Mov't Mem. at 46). Movant's reference to unspecified facts from his childhood and upbringing – as a matter that could have been raised under § 3553 at a resentencing hearing – is insufficient to show that Movant was prejudiced by counsel's action in filing the joint motion on resentencing. Further, Movant provides no clear argument based on <u>Alleyne</u> or <u>Peugh</u> that could have been raised at resentencing and that would have had a reasonable chance of changing the resentencing outcome. Movant was allowed to waive any right to be present at resentencing. Absent any showing on a matter that reasonably could have changed the resentencing outcome, counsel was not ineffective for advising Movant that he did not need to appear for resentencing and for filing the joint motion on resentencing.

### D.     <u>Ground Twelve – Resentencing</u>

Movant argues that the court violated his due process rights when it resentenced him when he was not present. (Mot. to Vacate, Ground Twelve; Mov't Mem. at 38-39). Ground Twelve fails. Not only did Movant waive his right to appear for resentencing, he procedurally defaulted any challenge to his resentencing when he failed to appeal. Movant has not overcome his default.

32

## IV.     Certificate of Appealability (COA)

Under Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  The Court will issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   The applicant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Melton v. Sec'y, Fla. Dep't of Corr., 778 F.3d 1234, 1236 (11th Cir. 2015) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted), pet. for cert. filed, (U.S. July 31, 2015) (Nos. 14A1115, 15-5522).

> When the district court denies a habeas petition on procedural grounds . . . a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Damren v. Florida, 776 F.3d 816, 820 (11th Cir. 2015) (quoting Slack, 529 U.S. at 484).

33

It is recommended that none of Movant's grounds warrant a COA.  If the Court adopts this recommendation and denies a COA, Movant is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."   Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts.

## V.   Conclusion

For the reasons stated above,

**IT IS RECOMMENDED** that Movant's motion [176] to vacate, set aside, or correct his federal sentence be **DENIED** and that a COA be **DENIED**.

The Clerk of Court is **DIRECTED** to withdraw the referral of this § 2255 motion to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED and DIRECTED**, this 13th day of October, 2015.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)